---

### Lᴇᴡɪs Dᴜɴʟᴀᴘ *v.* Tʜᴇ Sᴛᴀᴛᴇ.

1. Cᴏɴᴛɪɴᴜᴀɴᴄᴇ. — Refusal of a continuance is not error unless the record shows that the rights of the appellant were prejudiced by an abuse of the discretion of the trial judge, upon whom is devolved the responsibility of determining the truth, merits, and sufficiency of all applications for continuance, primarily when they are submitted, and again on motions for new trials.

2. Lᴇɢᴀʟ Hᴏʟɪᴅᴀʏs. — The 1st of January and certain other days are declared by statute to be "legal holidays," and are assimilated to the Sabbath in respect of certain civil proceedings and purposes; but the courts are not required to suspend their proceedings on such days. It was not error, therefore, to refuse to postpone a trial because the day was the first of January.

3. Eᴠɪᴅᴇɴᴄᴇ ᴏғ Dᴇᴄᴇᴀsᴇᴅ Wɪᴛɴᴇss. — In the trial of the appellant for the murder of one C., the State offered in evidence the deposition of C., given and reduced to writing at an examining trial of the appellant for an assault with intent to murder the said C., who died after the examining trial. On objection by the defence that the deposition was not properly authenticated, it was excluded by the court, and then the State offered to prove by parol the testimony of C. at the examining trial. To the parol proof the defence objected that it was not the best evidence of C.'s testimony, and that C.'s testimony was not given on a trial of the appellant for the same offence as that for which he was then on trial, viz.,

murder. *Held,* that the objections were properly overruled, and the parol proof of C.'s testimony correctly admitted. See the opinion *in extenso* on the subject.

APPEAL from the District Court of Anderson. Tried below before the Hon. P. F. EDWARDS.

The indictment charged the appellant with the murder of Walter Cobbs, by cutting him with a knife, on July 12, 1879. The jury found him guilty of murder in the first degree, and assessed his punishment at confinement for life in the penitentiary.

The defendant and the deceased were negroes, as also was Martha Fisher, one of the principal witnesses for the prosecution. She testified that Walter Cobbs was cut in the night of July 12, 1879, and died on the 22d of the same month. On the night he was cut, the defendant came to the house where witness lived, and asked her where Cobbs was. She replied that Cobbs had not yet come home, and the defendant started off. She called after him and inquired what he wanted with Cobbs, and he replied that he was going to get after Cobbs about some tales he had been telling about him. Witness told him he need not do it, for it would do no good, and he said that he had held in about it as long as he could. Witness told him not to hurt Cobbs, and that Cobbs was unarmed and did not even have a pocket-knife; to which he answered that no man could get the best of him. Just then Cobbs walked up to the gate, and the defendant told him he wanted to see him, and they walked off together towards the railroad track. Witness told Robert Payne to follow and keep them from fighting. When she next saw Cobbs he was cut in the stomach and back of the neck. On her cross-examination the witness stated that there had been " no relation " between her and Cobbs, nor between her and the defendant, but stated that she and Cobbs occupied the same bed.

By the testimony of Cobbs at the examining trial, repro-

duced by the State as shown in the opinion, it appears that, after walking together some distance, the defendant and Cobbs came to a halt, and the former said, " Walter, I want to know where that mob is that you are going to get up to mob me?" and Cobbs replied, " Lewis, you know I don't know anybody here, and that I am a stranger ; and you are saying this to pick a row with me, and you know I have been a friend to you ever since I have been here." The defendant thereupon called Cobbs a " G—d d—n liar," and Cobbs replied that he would strike the defendant if he should repeat the epithet. It being repeated by the defendant, Cobbs struck him in the face and was instantly stabbed by the defendant with a knife. They " clinched," and Cobbs " heard blood sloshing " in his stomach, and ran, exclaiming that he was cut all to pieces. Robert Payne, who had been standing by, told the defendant he would arrest him, and the defendant, who was pursuing Cobbs, then took after Payne. Cobbs stated that he had never threatened the defendant, and had always considered him his friend.

The defendant introduced several witnesses, who gave him a very good character as a peaceable and law-abiding man. Payne was not a witness at the trial. Matters immediately relevant to the rulings appear in the opinion.

No brief for the appellant has reached the reporters.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J. This appeal is from a judgment of conviction of murder in the first degree, the penalty imposed being confinement in the State penitentiary for life.

The indictment charges an assault with a knife, a deadly weapon, by the defendant, upon the person of one Walter Cobbs, and the infliction of a mortal wound on the person of Cobbs, in Anderson County, on July 12, 1879, and which terminated in the death of Cobbs in the same

county, on July 22, 1879. The indictment was returned into court and filed November 22, 1879.

On the call of the case on December 29, 1879, counsel representing the State announced ready for trial, when the defendant stated he was not ready, and presented to the court an affidavit for a continuance. On a hearing, the court overruled the application for a continuance, and to the action and ruling of the court counsel for the defendant took a bill of exceptions.

The record does not show very clearly the grounds upon which the trial was postponed, still the fact is apparent that the case was again called for trial on January 1, 1880. When the case was called on the first day of January, the defendant, through his counsel, excepted to a peremptory call and an announcement from him on that day, on the ground that by the statute law of this State the first day of January is established as a legal holiday. The court overruled the exception and the trial proceeded.

During the progress of the trial, counsel for the prosecution desired to reproduce the testimony of Walter Cobbs as evidence on the trial. The testimony offered was what purported to be the evidence of the deceased, Cobbs, taken before one W. M. Lacy, a justice of the peace for Anderson County, sitting as an examining court, before the death of Cobbs, when an inquiry was made into the facts of the difficulty between the defendant and the deceased, on a charge preferred against the defendant for an assault with intent to murder, anterior to the death of the deceased. The written deposition taken before the examining magistrate was offered, the introduction of which was objected to by the defendant on the ground that what purported to be the written deposition of the deceased had not been properly certified by the examining justice.

The objection was sustained by the court, and the deposition was not permitted to go to the jury. Counsel for the prosecution then proposed to place before the jury

the evidence of the deceased given before the examining court, by proving, by parol, what the deceased had testified on the preliminary trial of the charge of assault with intent to murder. Preparatory to the introduction of the proof, a witness was sworn and examined, who testified as to the arrest of the defendant on a warrant issued by Lacy, the justice, based on an affidavit charging the defendant with an assault with intent to murder Cobbs. The witness, in order to qualify himself to testify as to the evidence given by the deceased, said : " I and a deputy-sheriff took the defendant out of jail and carried him before the examining court, shown to have been held at the house of the deceased. * * * The defendant was under arrest and a prisoner. Walter Cobbs was then sworn by the justice, and testified in answer to questions asked by the justice and by the deceased. I wrote down the answers of the witness Cobbs, which were signed and sworn to by him before said justice. I think I can, by reference to this paper, which is the same, and in my handwriting (the one containing, in writing, Cobbs' deposition), detail the testimony, direct and cross, in the exact words of Walter Cobbs on that occasion. I know I can, by reference to this writing, give the evidence of Cobbs then taken, and without referring to the writing I can give the substance of his testimony in full."

The witness having the writing in his hand, and referring to it while testifying, proceeded in detail to give the testimony of the deceased, Cobbs, as given by him on the examining trial. The defendant, by counsel, objected to this testimony on various grounds.

1. The evidence of Cobbs was not taken on an examining trial, nor on a former trial of this defendant upon the same charge — to wit, of murder — upon which the defendant is now being tried.

2. The testimony of Walter Cobbs, as testified to by Horace Word, was given in a case charging this defendant with

assault with intent to murder, and not the offence of which·
he is now charged and upon which he is now being tried.      .

3. The deposition of Cobbs was in writing, and it is in-
competent to prove by parol what is required by law to be
in writing.    And it is not admissible to prove by parol that
an oath was administered to the deceased witness.

4. The witness Word on *voir dire* stated that the evi-
dence was reduced to writing, and signed and certified by
the justice of the peace ; therefore, such writing is the best
evidence, and secondary evidence is inadmissible, there being
no proof of the loss or destruction of the writing

The objections were overruled and the testimony admitted,
the defendant's counsel reserving a bill of exceptions.

With reference to the action of the court in overruling the
defendant's application for a continuance, we need not, per-
haps, do more than call attention to the fact that, by the law
in force at the time the application was made, all applica--
tions for a continuance, when made by a defendant on ac-
count of absent witnesses, and the truth of the first or any
subsequent application, as well as the merit of the grounds
set forth therein, and its sufficiency, are addressed to the
sound discretion of. the court who is to pass upon the appli-
cation, and a continuance is not to be granted as a matter
of right.    Code Cr. Proc., art. 560, subd. 6.          ·  .

It is provided in a proviso appended to this article as
follows :  " *Provided*, that should an application for a con-
tinuance be overruled and the defendant convicted, if it ap-
pear upon the trial that the evidence of a witness or wit-
nesses named in the application was of a material character,
and that the facts set forth in said application were probably.
true, a new trial should be granted, and the cause contin-
ued for the term, or postponed to a future day of the same
term."

It must be apparent that our law-makers intended to place.
the responsibility upon the trial judges of passing upon the
truth of the application for a continuance, as well as the

merit of the grounds set forth in the application, and the sufficiency thereof, in the first instance ; and if the application be overruled and the defendant be convicted, that, in the second place, the trial judge shall review the application for a continuance in passing upon a motion for a new trial ; and if it then shall appear to him that the evidence of the witness or witnesses named in the application for a continuance was of a material character, and that the facts stated in the application to which the absent witnesses would testify were probably true, then a new trial should be granted. Questions of this character have so often been before this court since the Revised Code of Procedure took effect, that it has become a settled rule of practice that we will not reverse the action of the trial judge, on appeal, unless it shall be made to appear by the record that the discretion confided by law to the judge who presides at the trial has been abused by him to the prejudice of the appellant. *Reynolds* v. *The State*, 7 Texas Ct. App. 516.

In the present case, independent of the affidavit filed in opposition to the continuance, we fail to discover any such abuse of the discretion given by law to the judge of the court below as would warrant a revision of his action on this appeal. Hence, it is not important that we consider the question presented by the defendant's counsel relative to the affidavit filed in opposition to the continuance. It may not be amiss, however, to say that the opposition to such an application as is provided for in art. 464, Code of Criminal Procedure, applies as well to a first as to any subsequent application for a continuance. The manner of making the objection is stated in the article, and it is therein provided that any material fact stated affecting diligence in an application may be denied by the absent party. When a denial of the facts affecting diligence has been filed as provided in art. 564, the issue thus presented shall be tried by the judge, and he may hear testimony by affidavits, and either grant or refuse the continuance, according to the law and

the facts. Code Cr. Proc., art. 565. These are new provisions of the Code.

With regard to the objection of the defendant to being put on trial on the first day of January, on the ground that that day was a legal holiday, we are of opinion that he was not deprived of any legal or substantial right by the action of the court. Whilst it is true that by statute of this State certain days, and among them the first day of January, are declared holidays, on which all the public offices of the State may be closed, and shall be treated and considered as Sunday, or the Christian Sabbath, for all purposes regarding the presenting for payment or the acceptance, and of protesting for and giving notice of the dishonor of bills of exchange, bank checks, and promissory notes placed by law upon a footing of bills of exchange, and that all the exemptions and requirements usual on legal holidays may be observed on the several days named in the statute as holidays; and whilst provision is made for the observance of the holiday, should the day named fall on Sunday, and for the presentation, etc., of negotiable paper in such state of case (Rev. Stats., arts. 2835, 2837), we fail to find that, by word or implication, our law-makers ever intended that the courts of the State should suspend proceedings on the days named as legal holidays, except at their own discretion, or that those days are assimilated to Sunday, or the Christian Sabbath, except in relation to civil matters, such as the presentation of negotiable paper for acceptance or payment, protests, and the like. To the extent that holidays have been assimilated to Sunday by statute they must be enforced, but, we apprehend, no further. They are not to be held the same as the Sabbath day, or as not a day for judicial or legal proceedings, as the Sabbath is denominated. *Dies Dominicus non est juridicus.* Broom's Leg. Max. With us, the rights, duties, and privileges of the citizen, as well as what duties may be performed by courts and officials, are regulated by statute law; but we nowhere find that, except as above stated,

the general provisions of the statutes respecting the Sabbath, or Sunday, are to be applied to legal holidays. In the present case it appears by the record that the day of the week on which the trial commenced was not Sunday, but Thursday. We are of opinion the court did not err in refusing to further postpone the trial because the day was, under the civil statutes, a legal holiday.

As to the manner in which the evidence of the deceased, given before his death, at an examining trial of the defendant on a charge of an assault with intent to murder the man Cobbs, was reproduced by the testimony of the witness Word, we are of opinion the State was entitled to the testimony as competent evidence against the defendant. The question here presented is quite similar to that in the case of *The State* v. *Simien*, 30 La. An. 296. In that case the State offered in evidence what purported to be a voluntary declaration of the accused before a justice of the peace who held the preliminary examination, which, on objection by the accused that such declaration was defective in form, was ruled out by the court. The State then offered the justice of the peace as a witness, to prove by parol that a declaration had been made before him by the accused, and what that declaration was. The objection of the defendant to the admission of this testimony was overruled, and he excepted to the ruling. The Supreme Court, in determining the question, after examining cases where the statute requires certain formalities to be observed in reducing to writing certain proceedings had on preliminary trials, and noticing the precise points decided in several cases, say: " Neither of these cases is like the present, for the magistrates did take down the declaration in writing, and it is not lost, but was produced, and rejected on objection by the accused. Our statute (the court say) providing for the declarations of an accused person to be taken down in writing is similar to those of other States, and they are all either copied from or assimilated to the statute of Philip

and Mary, which first broke down the rule of the common law in England, until then inexorable, that no examination of the prisoner himself was permissible. But before the passage of that statute, the confession of a prisoner, when made under circumstances defined by law, were admissible. We hold (the opinion continues) that where a declaration of a prisoner to the committing magistrate has been reduced to writing by the magistrate, and the written examination is offered by the State, and, upon objection by the prisoner of its informality, it is held inadmissible by reason of irregularity, parol evidence is admissible to prove what he voluntarily disclosed." 1 Greenl. on Ev., sect. 227.

It is conceded that the question we are considering is not precisely analogous to that in Simien's case, but in so far as it holds that where the proceedings had before an examining court are rendered inadmissible on account of irregularity in preparing them, that in such a contingency it is competent to supply the record by parol, we are of opinion the reasoning upon which the rule rests is equally as applicable to the reproduction of the testimony of a deceased witness as it is to the reproduction of a statement made by the defendant, and that where the testimony of the deceased witness given before the examining court was ruled out because defectively certified by the magistrate, it was competent for the State to prove by parol, on the trial of the defendant in chief, what the deceased witness had testified to before the examining court prior to his death. On the general subject of proving by a witness on a trial what a deceased witness had testified to in the same case, it was settled in *Black* v. *The State*, 1 Texas Ct. App. 368, that this was permissible under the law, and applies to dying declarations as well as to other facts testified to by the deceased witness. It seems, too, that proof of what a deceased witness testified to on a preliminary examination before a justice of the peace, touching the same charge for which the accused stands indicted, is admissible against him

although the examination was not reduced to writing. 17 Ala. 354, 658, cited in Black's case.

It is objected, however, that the case in which the witness testified was not the same as that in which it was sought to prove what he had testified to, the difference between the two cases being that, when the deceased witness testified, the defendant was undergoing an examination on a charge of assault with intent to murder the witness, whilst the effort was being made to apply his testimony on a trial of the defendant on a charge of murder — to wit, for the murder of the deceased witness. We are of opinion that, practically, the difference between the two cases, as put by the objection, is rather imaginary than real. It is not pretended that the two investigations involved the same transaction, the difference being as to the grades of the offence merely, affecting the defendant only as to the punishment. Both were between the same parties — the State on the one hand and the defendant on the other. It is true that, as a general rule in criminal trials, the accused shall be confronted with the witnesses against him. Bill of Rights, Art. I., sect. 10. It is also provided by law that the defendant upon a trial shall be confronted with the witnesses, except in certain cases provided for in the Code of Criminal Procedure where depositions have been taken. But whilst these general rules obtain, there are certain exceptions and limitations to which they have long been held subject.

The following rule is deduced by Mr. Cooley, in his Constitutional Limitations, from the authorities, to wit: " The testimony for the people in criminal cases can only, as a general rule, be given by witnesses who are present in court. The defendant is entitled to be confronted with the witnesses against him, and if any of them be absent from the Commonwealth, so that their attendance cannot be compelled, or if they be dead, or have become incapacitated to give evidence, there is no mode by which their statements against the prisoner can be used for his conviction.

" The exceptions to this rule are of cases which are ex-
cluded from its reason by their peculiar circumstances, but
they are far from numerous. If the witness was sworn be-
fore the examining magistrate, or before a coroner, and the
accused had an opportunity then to cross-examine him or if
there was a former trial, on which he was sworn, it seems
allowable to make use of his deposition or of the minutes
of his examination, if the witness has since deceased, or is
insane, or sick and unable to testify, or has been summoned
but appears to have been kept away by the opposite party."
Const. Lim. 318, foot pp. 363, 364 ; 1 Greenl. on Ev., sects.
163, 166 ; Whart. Cr. Law, sect. 667. And, agreeably
to Mr. Greenleaf, where the testimony was given under oath
in a judicial proceeding in which the adverse litigant was a
party, and when he had the power to cross-examine and was
legally called upon to do so, the great and ordinary test of
truth being no longer wanting, the testimony so given is
admitted, after the decease of the witness, in any subsequent
suit between the same parties.    1 Greenl. on Ev., sect. 163,
where several authorities are cited in note 1.

The rules of evidence known to the common law of Eng-
land in both civil and criminal cases, it is declared by
statute, shall govern in the trial of criminal actions in this
State, except where they are in conflict with the provisions
of the Code of Criminal Procedure, or of some statute of
the State.    Code Cr. Proc., art. 725.    Under these authori-
ties, we are of opinion that the testimony given under oath
by the witness Cobbs, while alive, before the examining
court, when the defendant was being examined on a charge
of assault with intent to murder, was properly reproduced
by the witness Word, after the death of the witness Cobbs,
on the trial of the defendant for murder.

There were two special charges asked by the defendant's
counsel which were refused by the court.    In this we find
no error.    The substance and the legal principles embraced
in the special instructions asked and refused are embodied
substantially in the general charge.

The defendant's counsel excepted to the charge of the court on the grounds hereinafter set out : —

" 1. The court failed to give to the jury in charge all the law of the case, applicable to this case under the testimony introduced and admitted on the trial of the same." This exception is general in its character, and fails to point out any special defect or omission in the charge. Considering the exception as applying to the general charge, we fail to discover the force of the objection. The general charge of the court was evidently prepared with great care, in which every reasonable deduction the jury could make from the evidence was fully explained to the jury.

" 2. The court failed to give in charge to the jury the law applicable to an assault with intent to murder." In our opinion there was no evidence adduced on the trial which required of the court a charge on a lesser degree of the offence than manslaughter, and as to this grade of offence the charge was full and complete.

" 3. The court failed to charge the jury upon the subject of proof of good character, as proved by the defendant on the trial of the case." The court permitted evidence of the former peaceable character of the defendant to go to the jury. This evidence went to the jury, who are by law the exclusive judges of the credibility of the witnesses and the weight to be given to the testimony ; and as to this the jury were properly instructed. The court was not required to do more than this. *Heard* v. *The State,* at the present term, *ante,* p. 1.

4. This exception complains that it was error for the court to charge at all on the subject of mutual combat, there being no evidence, it is contended, tending to any agreement to fight or any mutuality in combat. From one portion of the testimony it is not improbable that the jury might have inferred that both parties were willing to engage in some sort of combat, and hence the propriety of a charge on the subject. The charge on that

subject was in substantial accord with the authorities. *The People* v. *Sanchez*, 24 Cal. 27 ; *King* v. *The State*, 4 Texas Ct. App. 54.

The remaining exception to the charge is that the qualifying part of the charge of the court in regard to the law of self-defence had the effect to destroy the effect of the charge of the law of self-defence, and was calculated to mislead the jury. As to this exception, it is sufficient to say that in our opinion the charge on self-defence, including the qualification complained of, gave to the defendant all the law entitled him to under the evidence.

One portion of the testimony of the medical witness who attended the deceased from the time he received the fatal wound, rendered an instruction proper on the subject of whether the wound was the cause of the death. On this subject the court gave to the jury appropriate instructions, giving substantially the law as found in the Code on that subject.

A careful consideration of the whole case, as made by the record, leads to the conclusion that the appellant has had a fair and impartial trial, in which his rights were properly guarded, and in which, so far as we can discover, the law has been properly administered. The indictment is without material defect, and the evidence, in our opinion, is sufficient to support the finding of the jury and the judgment of the court.

The judgment of the District Court is affirmed.

*Affirmed.*